**AKERMAN LLP**
JUSTIN D. BALSER (SBN 213478)
Email: justin.balser@akerman.com
PARISA JASSIM (SBN 273915)
Email: parisa.jassim@akerman.com
601 W. Fifth Street, Suite 300
Los Angeles, California 90071
Telephone:   213.688.9500
Facsimile:    213.627.6342

TAYLOR T. HAYWOOD (*admitted*
*Pro Hac Vice*)
Email: taylor.haywood@akerman.com
1900 16th Street, Suite 1700
Denver, Colorado 80202
Telephone:  303.260.7712
Facsimile:   303.260.7714

ERIN E. EDWARDS (*admitted Pro Hac Vice*)
Email: erin.edwards@akerman.com
71 South Wacker Drive, 47th Floor
Chicago, Illinois 60606
Telephone:  312.634.5700
Facsimile:   312.424-1900

*Attorneys for plaintiff Private National Mortgage
Acceptance Company, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| PRIVATE NATIONAL MORTGAGE ACCEPTANCE COMPANY, LLC. <br><br> Plaintiff, <br><br> v. <br><br> PROPRIETARY CAPITAL, LLC, a Delaware limited liability company; BRANDON D. WATTS, <br><br> Defendants. | Case No. 2:21-cv-02992-SB-AS <br> Hon. Stanley Blumenfeld, Jr. <br><br> **PRIVATE NATIONAL MORTGAGE ACCEPTANCE COMPANY, LLC'S REPLY SUPPORTING ITS MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date:  August 6, 2021 <br> Time:  8:30 a.m. <br> Crtrm: 6C <br><br> Complaint filed:  April 6, 2021 <br> FAC filed: June 11, 2021 <br> Trial Date:  October 17, 2022 |

Private National Mortgage Acceptance Company (**PennyMac**) replies supporting its motion for preliminary injunction, ECF No. 39.  Proprietary Capital, LLC (**PropCap**) and Brandon D. Watts' opposition is ECF No. 50.

59056722;6

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................. 1

II.   ARGUMENT .................................................................................. 1

      A.    Mr. Watts and PropCap Misappropriated PennyMac's Trade Secrets.. 1

            1.   Mr. Watts and PropCap misunderstand the misappropriation definition .......................................... 1

            2.   Mr. Watts misappropriated the EBO Model by acquisition ....... 2

            3.   Mr. Watts and PropCap misappropriated the Model by use and disclosure ................................................ 5

            4.   Mr. Watts and PropCap continue misappropriating the Model ......................................................... 7

            5.   The deal transaction documents are trade secrets ...................... 9

            6.   Mr. Watts and PropCap misappropriated the deal documents ................................................... 9

      B.    Mr. Watts and PropCap Engaged in Unfair Competition. ................. 10

      C.    Mr. Watts and PropCap Do Not Refute PennyMac's Harm. ............. 11

      D.    The Equities and Public Interest Favor PennyMac. ........................... 12

      E.    The Court Should Not Require A Bond. ............................................ 12

III.  CONCLUSION .............................................................................. 12

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   399 F. Supp. 2d 1064 (N.D. Cal. 2005).................................................5

*A1 Electronics, Inc. v. Chang*,
   2007 WL 9734430 (C.D. Cal. July 18, 2007) .......................................9

*Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*,
   226 Cal. App. 4th 26 (2014) ..................................................................2

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
   331 F. Supp. 3d 977 (N.D. Cal. 2018)................................................2, 6

*Dealertrack, Inc. v. Huber*,
   460 F. Supp. 2d 1177 (C.D. Cal. 2006) .................................................2

*Global Tranz Enter. Inc. v. Shipper's Choice Global LLC*,
   No. CV-16-04038-PHX-ROS, 2017 WL 11609546 (D. Ariz. Feb. 23, 2017) ....3

*Indep. Techs., LLC v. Otodata Wireless Network, Inc.*,
   No. 320CV00072RJCCLB, 2020 WL 1433525 (D. Nev. Mar. 23, 2020)...........2

*Morlife, Inc. v. Perry*,
   56 Cal. App. 4th 1514 (1997) ................................................................5

*PMC, Inc. v. Kadisha*,
   78 Cal. App. 4th 1368 (2000) ..........................................................5, 10

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ........................................................2, 5, 9

*Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*,
   281 F. Supp. 3d 1021 (S.D. Cal. 2017) ............................................8, 11

**Statutes**

18 U.S.C. § 1836.......................................................................................2

18 U.S.C. § 1839....................................................................................2, 5

Cal. Civ. Code § 3426.1(b) ...................................................................2, 5

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION**

59056722;6

1

Cal. Civ. Code § 3426.3.............................................................................................2

2

**Other Authorities**

3

Restatement (Third) Unfair Competition § 40 (1995) Comment c ..........................6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AKERMAN LLP**

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION**
59056722;6

# I.    INTRODUCTION

Mr. Watts and PropCap contradict themselves in their opposition.  They deny misappropriating PennyMac's trade secrets yet admit Mr. Watts sent himself PennyMac's EBO Cashflow Model and deal transaction documents without permission, violating PennyMac's written policies. This alone is misappropriation.  Mr. Watts and PropCap continued the misappropriation by admittedly sending PennyMac and "third parties" a model copy with PennyMac's performance vectors.  No non-disclosure agreement or pandemic-related inconveniences excuse these actions.  And it is irrelevant whether they are turning a profit off of stealing and disclosing PennyMac's trade secrets.  Their conduct is causing PennyMac direct, irreparable harm.  Mr. Watts and PropCap show no regard for competing in the EBO market fairly.  If they did, they would have no issue returning or destroying PennyMac's Model, deal transaction documents and any models or documents based on or derived from their contents.  Their opposition confirms the necessity for an immediate injunction.

# II.    ARGUMENT

## A.    Mr. Watts and PropCap Misappropriated PennyMac's Trade Secrets.

Mr. Watts and PropCap do not dispute PennyMac's Model and any substantive deal documents—rather than blank contracts—are trade secrets.  They resist an injunction by claiming no misappropriation occurred.  But Mr. Watts' admissions prove otherwise.

### 1.    *Mr. Watts and PropCap misunderstand the misappropriation definition*

Mr. Watts and PropCap claim they never misappropriated PennyMac's Model or transaction documents because Mr. Watts did not "intend" to steal trade secrets when taking them and never profited from their use.  (ECF No. 50, pp. 5, 12, 19.)  Even the premise is false.  Mr. Watts admits using the Model at PropCap to avoid reformatting a new file, disclosing Model vectors to third parties and locking up a one-year deal with a competitor.  (ECF No. 39-3, Ex. 3; ECF No. 50-1, ¶¶ 21, 22.)  Mr. Watts and PropCap undoubtedly profited off the trade secrets Mr. Watts intentionally took for his benefit.

But even if the court believes their false statements, intent is irrelevant.

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Misappropriation occurs when a person acquires, uses or discloses a trade secret with reason to know it was acquired through improper means.  Cal. Civ. Code § 3426.1(b); *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp. 3d 977, 980 (N.D. Cal. 2018).  A person acquires a trade secret through improper means when he breaches a duty to maintain secrecy, such as an employee handbook's confidentiality clause.  18 U.S.C. § 1839(6); *Indep. Techs., LLC v. Otodata Wireless Network, Inc.*, No. 320CV00072RJCCLB, 2020 WL 1433525 (D. Nev. Mar. 23, 2020) (defendants had a duty to keep former employer's trade secrets private under employee manual but violated the duty by taking the information to their new employer).  Intent is not required.

Profit is not required, either.  Mr. Watts and PropCap believe they can continue harming PennyMac by stealing, using and disclosing its trade secrets until they personally benefit.  That is not the law.  They unsurprisingly cite nothing supportive.  A trade secret owner may bring a civil action against an individual or entity who misappropriated the trade secret.  18 U.S.C. § 1836; Cal. Civ. Code § 3426.3.  No statutory provision requires the misappropriator realize a profit before the trade secret owner sues.  *See Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 68 (2014) (trade secret owner entitled to royalties even where defendant never a realized profit off trade secret use).  PennyMac succeeds on the merits even without profit evidence.

## 2. *Mr. Watts misappropriated the EBO Model by acquisition*

Mr. Watts and PropCap also fail to recognize Mr. Watts misappropriated PennyMac's Model the second he acquired it.  Trade secret acquisition alone constitutes misappropriation so long as the misappropriator had a duty to maintain its secrecy.  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 222 (2010) (defendant misappropriates a trade secret "through three types of conduct: acquisition, disclosure, or use.") (quotations omitted); *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1184 (C.D. Cal. 2006) ("Plaintiff also argues that Defendants have not alleged the misappropriation of the trade secret because Defendants have not alleged use of the information obtained.  But the UTSA does not require such allegations.").

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION**

59056722;6

Mr. Watts' admission he sent the Model to his personal email address while a PennyMac employee meets the acquisition requirement. (ECF No. 50-1, ¶¶ 13, 21, 22); *see Global Tranz Enter. Inc. v. Shipper's Choice Global LLC*, No. CV-16-04038-PHX-ROS, 2017 WL 11609546, *5 (D. Ariz. Feb. 23, 2017) (employees acquired trade secrets by emailing them to their home email address). Mr. Watts and PropCap's false statements PennyMac sent Mr. Watts the Model and performance vectors under a non-disclosure agreement change nothing. (ECF No. 50, pp. 13, 14; ECF No. 50-1, ¶ 19.) Joshua Summers contradicts them by admitting PennyMac only provided Model "portions." (ECF No. 50-5, ¶ 10.) Mr. Watts, on the other hand, sent himself numerous PennyMac documents via email while a PennyMac employee, including full "cashflow models." (ECF No. 50-1, ¶ 13.) He admits using the full "Excel file that [he] originally created at PennyMac"—not just the performance vectors—immediately after starting with PropCap. (*Id.* at ¶ 22.) The non-disclosure agreement was not in place until more than two weeks later. (*Id.* at Ex. 1.) And he says PennyMac "*would have*" sent him the vectors if requested, proving PennyMac never provided them. (*Id.* at ¶ 21 (emphasis added).) Mr. Watts and Mr. Summers could easily have attached an email or share file confirmation showing PennyMac provided the full Model or vectors to their declarations. They did not—because PennyMac never sent Mr. Watts the full Model or performance vectors he used to solicit business. (ECF No. 39-1, ¶ 19.) Mr. Watts acquired the Model and vectors on his own, then used them to undercut PennyMac's prices for PropCap's benefit. (ECF No. 39-3, Ex. 3, 4.)

Doing so violated Mr. Watts' duty to maintain the Model's secrecy. He agreed "PennyMac's records, reports, software, products or documents may not be removed or copied at any time without prior management written approval and as required in the performance of duties for PennyMac" when signing PennyMac's employee handbook. (ECF No. 39-2, p. 23.) "Further, all employees are required to protect and safeguard all such Proprietary Information and confidential information from unauthorized disclosure." (*Id.* at p. 22.) Mr. Watts breached PennyMac's written policies by personally

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1  acquiring the Model without PennyMac's written consent.

2       Mr. Watts cannot avoid his duty to maintain the Model's secrecy by claiming

3  PennyMac employees frequently emailed themselves PennyMac documents during the

4  pandemic and when experiencing intermittent server interruption.  (ECF No. 50, p. 11;

5  ECF No. 50-1, ¶¶ 12, 13.)  He does not lay any foundation or attach supporting evidence

6  for his statement.[1]  Regardless, whether other employees supposedly breached their

7  confidentiality obligations is irrelevant.  Mr. Watts and PropCap provide no evidence

8  PennyMac knew about or permitted the conduct.  They likewise provide no evidence

9  PennyMac suspended its employment policies in any way.

10       And the fact Mr. Watts did not return or destroy the Model when he stopped

11  working for PennyMac eviscerates his "diligent employee" argument.  PennyMac's

12  handbook provides: "Upon an employee's termination, any documents relating to

13  Proprietary Information or work performed by the employee or others for PennyMac shall

14  be returned to PennyMac immediately."  (ECF No. 39-2, pp. 19, 23.)  This is not a case

15  of an employee simply wanting to do his job until he left the company.  Mr. Watts and

16  PropCap still have not returned or destroyed the Model and its derivatives.

17       Mr. Watts and PropCap's protest PennyMac and PropCap executed a non-

18  disclosure agreement is a deliberate diversion.  (*See* ECF No. 50, p. 13.)  Mr. Watts admits

19  taking the Model while a PennyMac employee—before any agreement between PropCap

20  and PennyMac existed.  (ECF No. 50-1, ¶¶ 13, 19, 22 and Ex. 1.)  He also admits using

21  the Model immediately when starting with PropCap.  (*Id.* at ¶ 22.)  The agreement was

22  not in place until more than two weeks later.  (*Id.* at Ex. 1.)  And the agreement

23  contemplated PropCap's use of documents and information PennyMac supplied—not

24  those Mr. Watts previously stole.  (*Id.*)  The non-disclosure agreement does not apply.

25

26

27  _____

[1] This is because PennyMac required all employees take their PennyMac desktop
28  computers home and provided VPN access during quarantine.  There was no need or
authorization to send PennyMac documents to personal emails.

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

CASE NO. 2:21-cv-02992-SB-AS

**REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION**

59056722;6

### 3. *Mr. Watts and PropCap misappropriated the Model by use and disclosure*

Mr. Watts and PropCap continued misappropriating the Model through each subsequent use and disclosure. *Silvaco Data Sys*, 184 Cal. App. 4th at 222; *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000) ("Employing the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information, all constitute use."). Their argument PennyMac and PropCap are not competitors is wrong and immaterial. *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005) (misappropriation can occur even if the product is not used to compete directly). They disclosed the model copy and vectors when soliciting direct competitor business, threatening market oversaturation and PennyMac's competitive advantage. (ECF No. 39, pp. 10-12, 15-18; ECF No. 39-3, Ex. 3; ECF No. 50-1, ¶ 21.)

Mr. Watts declares he "did . . . continue to use the same Excel file that [he] originally created at PennyMac" when he "arrived at PropCap." (ECF No. 50-1, ¶ 22.) This is black letter misappropriation by use. *See Silvaco Data Sys*, 184 Cal. App. 4th at 222; Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1839(5). He allegedly did so to avoid reformatting a new file. (ECF No. 50-1, ¶ 22.) Laziness does not excuse misappropriation. *See* 18 U.S.C. § 1839(5). Trade secret laws were designed to prohibit others from taking advantage of a trade secret owner's labor and ingenuity. *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (1997).

Mr. Watts and PropCap also misappropriated the Model by sending the copy to PennyMac for a business pitch, and each time Mr. Watts sent third parties the model replica and vectors. *See PMC, Inc.*, 78 Cal. App. 4th at 1383. The unrelated non-disclosure agreement does not sanction their conduct. Mr. Watts and PropCap did not acquire the Model under the agreement. (ECF No. 50-1, ¶¶ 13, 21, 22 and Ex. 1.) Nor could they launder Mr. Watts' misappropriation by referencing it. And the agreement specifically prohibits disclosing confidential documents and information to third parties. (*Id.* at Ex. 1.) That is the agreement's very purpose. (*See id.*)

**REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION**

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

59056722;6

Mr. Watts and PropCap falsely claim Mr. Watts "deleted all of the data and formulas" from the Model before using and disclosing it. (*Id.* at ¶ 22.) Mr. Watts' testimony just sentences earlier confirms the opposite. (*Id.* at ¶ 21.) He admits sending third parties PennyMac's vectors. (*Id.* at ¶ 21.) He did not delete them from the Model. This admission also disproves the statement he never "disseminated PennyMac's nonpublic data." (*Id.*) PennyMac's vectors derive from its years of compiled, non-public borrower data it alone possesses as a Ginnie Mae loan servicer. (ECF No. 39-1, ¶¶ 4, 15.) The data compilation consists of information on how its borrowers perform on their Ginnie Mae loans over time. (*Id.* at ¶ 4.) It includes performance, re-performance, default and foreclosure rates over the life of a loan. (*Id.*) The vectors are the synthesized results of PennyMac's non-public data compilation. (*Id.* at ¶ 15.) Mr. Watts disclosed the data by disclosing the vectors. (*Id.* at ¶¶ 4, 15.)

Mr. Watts and PropCap still committed misappropriation by use even if Mr. Watts "infused" PennyMac's Model with additional formulas and data. *BladeRoom Grp. Ltd.*, 331 F. Supp. 3d at 987 ("[U]nauthorized use need not extend to every aspect or feature of the trade secret; use of any substantial portion of the secret is sufficient to subject the actor to liability.") (quoting Restatement (Third) Unfair Competition § 40 (1995) cmt. c). The vectors are material Model components. They use historic loan data to predict the percentage of loans that will result in foreclosure, modification, short sale, deed-in-lieu of foreclosure, reinstatement or payoff in the future. (ECF No. 39-1, ¶ 15.) These predictions help PennyMac determine whether to buy potential EBOs, generate cash flows and create pricing for EBO sales and securitization. (*Id.* at ¶ 16.) The vectors are the heart of PennyMac's Model.

Mr. Watts disingenuously claims the vectors are stale and useless to competing servicers because PennyMac's "servicing practices" drive its "valuation results." (ECF No. 50-1, ¶¶ 5, 7.) He cites nothing supporting his hollow position—likely because Mr. Summers spends paragraphs explaining historic borrower behavior drives EBO performance assumptions and cashflow models, not servicing techniques. (ECF No. 50-

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION**

59056722;6

1   5, ¶¶ 6, 7, 16-19.)  Mr. Watts even acknowledges past performance data is necessary to

2   create future performance assumptions.  (ECF No. 50, pp. 7, 9, 10; ECF No. 50-1, ¶¶ 21,

3   22.)  PennyMac's Model and vectors contain significant data on how Ginnie Mae

4   borrowers perform over time.  (ECF No. 39-1, ¶ 15.)  The data would help any servicer

5   predict how a Ginnie Mae borrower will perform in the future when deciding to purchase

6   eligible EBO loans.  If PennyMac's historic borrower data was irrelevant, other servicers

7   would use their servicing experience to identify profitable EBO purchases with the same

8   low-level risk as PennyMac.  But PennyMac's market dominance proves they do not.  Its

9   leading EBO trade position evidences the vectors—basing on synthesized historic

10  borrower data—hold significant value.  (*Id.*)  Mr. Watts and PropCap do not dispute

11  PennyMac derives significant value from their secrecy.  (ECF No. 39, pp. 10-12.)

12      Mr. Watts and PropCap highlight the Model's value and the need to keep the Model

13  confidential by categorizing their own model as "proprietary."  (ECF No. 50, pp. 4, 7, 8.)

14  PennyMac never said it is the only market participant to develop a predictive cashflow

15  model.  (*See id.*)  But PropCap and Watts did not use the other servicers' models—they

16  used PennyMac's.  (ECF No. 50-1, ¶ 22.)  They also poached PennyMac employees to

17  build their EBO business.  This is not PennyMac "egotism."  It is evidence PropCap

18  wanted PennyMac's EBO secrets.  PennyMac proved its Model is the best through its

19  fourth quarter 2020 results.  (ECF No. 39-1, ¶ 9.)  It provides PennyMac a unique

20  competitive advantage.  (ECF No. 39, pp. 10-12.)  Mr. Watts and PropCap face

21  misappropriation liability for using and disclosing it.

22          **4.    *Mr. Watts and PropCap continue misappropriating the Model***

23      Mr. Watts and PropCap's arguments show they are not above stealing PennyMac's

24  trade secrets and pretending their actions have no consequence.  They give this court no

25  reason to believe their promise the alleged "PropCap model" does not derive from

26  PennyMac's Model.  (ECF No. 50, pp. 8-10, 14, 20.)  The court need not buy into their

27  story, either.  "Misappropriation includes not only wholesale pirating of an idea[], but

28  also the unauthorized utilization of an idea as a starting point or guide in developing a

AKERMAN LLP
601 W. FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

7                   CASE NO. 2:21-cv-02992-SB-AS

**REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION**

1    process or as a means to understand what pitfalls to avoid." *Yeiser Rsch. & Dev. LLC v.*
2    *Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1048 (S.D. Cal. 2017) (quotation omitted).  Mr.
3    Watts and PropCap stole and used PennyMac's Model.  (ECF No. 50-1, ¶¶ 21, 22.)  They
4    cannot take PennyMac's trade secrets—learning and utilizing intimate details about
5    PennyMac's EBO market success—then develop their own rival trade secret for future
6    transactions.   Mr. Watts and PropCap do not escape their continued liability and
7    PennyMac's harm this way.   Using their purported new model still constitutes
8    misappropriation because they first stole and used PennyMac's Model.  *See id.*

9         Even if they could avoid their continued misappropriation by building an entirely
10   separate model, the gaps in their testimony confirm they cannot be believed.  They state
11   the PropCap model is "based entirely on information publicly available from Ginnie Mae
12   and other public sources."  (*Id.* at p. 9.)  But they do not state where this alleged "public
13   information" is available.  They do not say why they could not include a URL or database
14   location in any of their five declarations.  (*See* ECF No. 50-1; ECF No. 50-5.)

15        This is because Mr. Summers' testimony proves Ginnie Mae's "publicly-available
16   data" solely relates to the eligible EBO loans' current delinquency status.  (ECF No. 50-
17   5, ¶ 6.)  Contrary to Mr. Watts and PropCap's representation, Mr. Summers never states
18   he possesses data on whether a loan is "current" or "30 days delinquent."  (ECF No. 50,
19   p. 9.)  He only possesses data on whether a loan is 3 to 6 months delinquent.  (ECF No.
20   50-5, ¶¶ 7, 11.)  EBO loans are at least 3 months delinquent, confirming Mr. Summers
21   only possesses existing EBO information.  (ECF No. 39, ¶ 6; ECF No. 50-1, ¶ 11.)  This
22   is not historic life-of-loan data.  PropCap could not create performance vectors and
23   assumptions based on this information alone.  It even acknowledges performance data is
24   necessary to create future performance assumptions.  (ECF No. 50, pp. 7, 9, 10; ECF No.
25   50-1, ¶¶ 21, 22; ECF No. 50-5, ¶¶ 6, 7, 16-19.)  But Ginnie Mae's available data does not
26   show how a loan will perform over time.  (ECF No. 50-5, ¶¶ 7, 11.)  There is no way for
27   PropCap to create accurate cashflow analysis and performance vectors, like PennyMac's,
28   without historical data.  (*See* ECF No. 39-1, ¶ 15.)

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION**
59056722;6

1  Mr. Summers also admits creating probability vectors for "loan modifications like

2  short-sale deeds in lieu of foreclosure." (ECF No. 50-5, ¶ 8.) Yet he could not get deed-

3  in-lieu or short sale data from Ginnie Mae or public sources. (*Id.* at ¶ 7.) Only PennyMac

4  has those data points. (ECF No. 39-1, ¶ 15; ECF No. 50-5, ¶ 3.) Mr. Watts and PropCap

5  still possess PennyMac's deed in lieu and short sale vectors and have not offered to return

6  or destroy them. The only logical conclusion is PropCap continues using those vectors

7  because it cannot obtain the underlying historic borrower data from any other source.

8  **5.    *The deal transaction documents are trade secrets***

9  Mr. Watts and PropCap claim business forms or blank contracts, unlike contracts

10  containing substantive transaction terms, do not enjoy trade secret protection under *A1*

11  *Electronics, Inc. v. Chang*, 2007 WL 9734430 (C.D. Cal. July 18, 2007). (ECF No. 50,

12  p. 22.) They then jump to conclude PennyMac's deal transaction documents are "blank

13  contractual documents." (*Id.* at p. 5.) They cite nothing supportive because PennyMac's

14  evidence refutes their spin. The deal documents are executed contracts between

15  PennyMac and an EBO purchaser setting out the substantive transaction terms. (ECF

16  No. 39-1, ¶ 18; ECF No. 39-3, Ex. 2.) By Mr. Watts and PropCap's own admission, they

17  fall within trade secret definition. (ECF No. 50, p. 22.)

18  **6.    *Mr. Watts and PropCap misappropriated the deal documents***

19  Like PennyMac's Model, Mr. Watts admits emailing himself PennyMac's deal

20  transaction documents, violating company policy. (ECF No. 50-1, ¶ 13; ECF No. 39-2,

21  pp. 22, 23.) This by itself constitutes misappropriation. *See Silvaco Data Systems*, 184

22  Cal. App. 4th at 222. He never obtained written management approval before sending

23  himself the documents and kept them even after ending his employment with PennyMac.

24  He then referred the counter-parties' outside counsel to PropCap for the purpose of

25  creating similar contracts. (ECF No. 50-1, ¶ 28.) Mr. Watts and PropCap still have not

26  returned or destroyed the documents.

27  Circumstantial evidence also proves Mr. Watts and PropCap used the transaction

28  documents. PropCap touts its investment experience as a distraction, but the truth is it

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

9

CASE NO. 2:21-cv-02992-SB-AS

had no experience in the EBO market before conspiring with Mr. Watts to steal PennyMac's business model.  (*See* ECF No. 50, pp. 6-8.)  There is no other plausible reason Mr. Watts used PennyMac's Model as a PropCap employee.  (ECF No. 50-1, ¶¶ 21, 22.)  PropCap does not claim possessing EBO purchase and sale contracts when Mr. Watts began negotiating EBO deals for PropCap, either.  Mr. Watts needed PennyMac's contracts and term knowledge for the deals he quickly closed at PropCap with PennyMac's stolen Model.  He used the deal documents to fill the void.

Mr. Watts and PropCap cannot claim PropCap's contracts base on its attorney's "expertise and experience," reflect "standard and customary provisions" or generally match the market.  (ECF No. 50, p. 16.)  That testimony must come from their attorney.  And despite Mr. Watts and PropCap's contentions, use includes more than just copying the contractual terms verbatim.   "Employing the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information, all constitute use." *PMC, Inc.*, 78 Cal. App. 4th at 1383.  The circumstantial evidence proves Mr. Watts and PropCap use the deal documents to develop their own favorable EBO purchase and sale terms.  They have no other reason to keep them.

**B.  Mr. Watts and PropCap Engaged in Unfair Competition.**

Mr. Watts and PropCap do not dispute they engaged in unfair competition if they used the misappropriated trade secrets to lure away PennyMac employees.  (ECF No. 50, pp. 20-21.)  They instead believe PennyMac cannot succeed on its unfair competition claim because they never misappropriated PennyMac's trade secrets.  (*Id.*)  But they already admitted taking and disclosing the Model and deal documents then raiding PennyMac's employees.  (ECF No. 50, p. 15; ECF No. 50-1, ¶¶ 13, 21, 22; ECF No. 50-2, ¶¶ 2, 3; ECF No. 50-4, ¶¶ 2, 3.)  They left nothing for PennyMac to prove.

PropCap claims starting its own cashflow model before hiring Mr. Watts.  (*Id.* at p. 8.)  But PropCap also confirmed "Mr. Watts and Mr. Summers were hired, in part, to create PropCap's own proprietary model." (*Id.* at p. 15.)  Both statements cannot be true.

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Mr. Watts also used PennyMac's Model as a PropCap employee, not some alleged model PropCap created.  (ECF No. 50-1, ¶¶ 21, 22.)  He admits not wanting to format a new file, proving PropCap did not even have a simple template to work from.  (*Id.* at ¶ 22.)  If PropCap had sufficient tools and analytics for navigating the EBO market on its own, Mr. Watts would have no reason to use PennyMac's proprietary documents as a PropCap employee.  But, consistent with its behavior, PropCap thought it could simply take PennyMac's entire EBO business model without consequence.

## C.   **Mr. Watts and PropCap Do Not Refute PennyMac's Harm.**

Mr. Watts and PropCap's response to PennyMac's argument it suffered irreparable harm again bases on their incorrect position no misappropriation occurred.  (ECF No. 50, pp. 22, 23.)  But it did.

They also contend PennyMac provides no direct evidence they conveyed PennyMac's trade secrets to third parties.  (*Id.* at p. 21.)  PennyMac did not need to supply the direct evidence.  Mr. Watts and PropCap did.  Mr. Watts admits he sent the foreclosure vectors to third parties in his declaration.  (ECF No. 50-1, ¶ 21.)

Trade secret owners can also prove misappropriation with circumstantial evidence.  *Yeiser Rsch. & Dev. LLC*, 281 F. Supp. 3d at 1048 (citing cases).  Mr. Watts admits using PennyMac's Model when he arrived at PropCap.  (ECF No. 50-1, ¶¶ 21, 22.)  He then locked up a one-year deal with PennyMac's competitor using his derived assumptions.  (ECF No. 39-3, Ex. 3.)  Mr. Watts put PennyMac's valuable, proprietary Model and vectors into the market for competing servicers' use.  (*Id.*; ECF No. 50-1, ¶ 21.)  Mr. Watts and PropCap do not dispute this will lead to a significant increase in EBO purchases across the country and directly result in decreased demand from PennyMac's third party EBO purchasers.  (*See* ECF No. 39, p. 10-12, 15-16.)

They also argue PennyMac disproved its harm by delaying complaint filing.  (ECF No. 50, p. 22.)  The argument ignores the parties' interactions.  PennyMac warned PropCap against using its proprietary information immediately after Mr. Watts gave his notice.  (ECF No. 39-3, Ex. 5.)  PennyMac only learned to distrust PropCap's word when

**REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION**

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

59056722;6

1    Mr. Cohen claimed Mr. Watts never violated his confidentiality obligations in February
2    2021. (*Id.* at Ex. 6.)  PennyMac filed suit less than two months later.  (ECF No. 1.)

3        Mr. Watts and PropCap also acknowledge the unique challenges all businesses and
4    employees face during the pandemic—they even try taking advantage of it.  (ECF No.
5    50, pp. 11-12.)  Work from home restrictions impacted efficiencies for everyone.  But
6    gradual economic recovery and approaching foreclosure restarts make it especially
7    critical the court issue an immediate injunction.  (ECF No. 39-1, ¶ 29.)  Mr. Watts and
8    PropCap do not disguise intending to take advantage of the unprecedented EBO loan
9    availability or dispute the impending decrease in available loans eligible for buyout.
10   (ECF No. 50, p. 8.)  The court should not permit them to continue using PennyMac's trade
11   secrets for padding their bottom line before that happens.

**D.     The Equities and Public Interest Favor PennyMac.**

13       Mr. Watts and PropCap claim the equities and public interest favor them because
14   PennyMac did not prove they misappropriated a trade secret.  (ECF No. 50, p. 23
15   ("Plaintiff has failed to present any credible evidence that Mr. Watts or PropCap
16   misappropriated any trade secrets or proprietary information.").)  But they again discredit
17   their own position by admitting Mr. Watts emailed himself the Model and deal transaction
18   documents in violation of company policy.  They should have no issue returning and
19   destroying all trade secrets, copies and derivatives, if they are not using them.  They
20   should also suffer no harm by an order enjoining their own model's use if competing
21   servicers can create equivalent performance predictions and cashflow assumptions with
22   only publicly available Ginnie Mae data and specific servicing techniques.

23   **E.     The Court Should Not Require A Bond.**

24       Mr. Watts and PropCap do not oppose the court holding no bond is required if the
25   court grants PennyMac's motion.

26                          **III.     CONCLUSION**

27       Mr. Watts and PropCap possess and use PennyMac's trade secrets, even disclosing
28   PennyMac's valuable performance vectors to third parties.  An injunction is necessary to

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

stop further harm.  The court should grant PennyMac's motion.

Dated: July 23, 2021.

**AKERMAN LLP**

By:  */s/ Erin E. Edwards*
Justin D. Balser
Parisa Jassim
Taylor T. Haywood
Erin E. Edwards

*Attorneys for plaintiff Private National Mortgage Acceptance Company, LLC*

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342